UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY BELL, | No. 2:16-cv-2548 KJM AC P |
| Plaintiff, | |
| v. | ORDER and |
| SCOTT KERNAN, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

I.     Introduction

Plaintiff is a state prisoner at the California Health Care Facility (CHCF) in Stockton, under the authority of the California Department of Corrections and Rehabilitation (CDCR).[1] Plaintiff proceeds pro se with a complaint filed pursuant to 42 U.S.C. § 1983, and a request for leave to proceed in forma pauperis filed pursuant to 28 U.S.C. § 1915. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the following reasons, plaintiff's request to proceed in forma pauperis is granted; however, the undersigned recommends that this action be dismissed without leave to

---

[1] Review of the Inmate Locator website operated by CDCR indicates that plaintiff has remained incarcerated at CHCF since he filed this action. See http://inmatelocator.cdcr.ca.gov/search.aspx. See also Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

amend for failure to state a cognizable federal claim.

II. In Forma Pauperis Application

Plaintiff has submitted an affidavit and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). See ECF No. 2. Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

Plaintiff must still pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

III. Screening of Plaintiff's Complaint

A. Legal Standards for Screening Prisoner Civil Rights Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.   Plaintiff's Allegations

The complaint names eleven defendants, mostly public officials, based on allegations that each created, perpetuated, disseminated and/or improperly relied on inaccurate and/or private information concerning plaintiff's criminal record.

Plaintiff alleges that in 2014 he requested and received from the California Department of Justice (DOJ) a printout of his criminal history record, dated October 27, 2014. The report reflected that on the date plaintiff was received into CDCR custody (September 25, 1997), "a nunc pro tunc, ex-parte proceeding took place . . . wherein the court allegedly cleared up improper entries in the [trial] transcript made by [defendant] Court Report D. Nagao," resulting in new Abstracts of Judgment that were never served on CDCR or plaintiff. ECF No. 1 at 8.

3

Plaintiff alleges that errors remain in the transcript and in the records of DOJ and CDCR, including a statement that plaintiff admitted to two prior felony convictions when, in fact, he admitted to one prior felony conviction and one prior plea-bargained misdemeanor conviction that included dismissal of a burglary charge. Id. at 8-9. This error was allegedly perpetuated by defendant Probation Officer E. Melia in plaintiff's pre-sentencing report, and was relied on by defendant District Attorney Lamb, defendant Public Defender Clark, and the Superior Court Judge in determining plaintiff's sentence. Id. at 9-15. Also named as defendants are former California Attorney General Harris, in her role as director of the DOJ Bureau of Criminal Information Analysis (BCIA); C. Santos, a DOJ employee who responded to plaintiff's questions about the BCIA; and A. Payan, a CDCR employee with authority for managing prisoner files and case records.

As a separate matter, plaintiff also contends that he was injured by CDCR's 2016 acknowledged *possible* data breach of California Correctional Health Care services (CCHCS) records.[2] Plaintiff alleges that although he refused the release of his CDCR medical records from the California Medical Facility (CMF) to the Veteran's Administration (VA), because he disagreed with the assessments of his CMF medical providers, the VA reached an adverse decision on his benefits application claim. Because that adverse decision came within a month of the possible breach, and the grounds for denial were consistent with the views of plaintiff's CMF providers, plaintiff alleges that the denial was based on information improperly revealed by the CCHCS data breach. Id. at 15-6.

---

[2] As explained in Abdul Wahab Khan v. California Corr. Health Care Servs., 2016 WL 4899232, at *2, 2016 U.S. Dist. LEXIS 125864, at *3-4 (E.D. Cal. Sept. 15, 2016):

> CCHCS informed prisoners of this possible disclosure by individual letters dated May 16, 2016. The letters informed each prisoner that, on April 25, 2016, CCHCS identified a "potential breach" of inmates' "Personally Identifiable Information and Protected Health Information" due to the February 25, 2016 theft of "[a]n unencrypted laptop . . .from a CCHCS workforce member's personal vehicle," although "[t]he laptop was password protected in accordance with state protocol." ECF No. 6 at 2. The letter further provides that CCHCS does not know whether any sensitive information was contained in the laptop and, even if it was, does not know whose information may have been included. Id.

4

Additional named defendants are former CDCR Secretary Scott Kernan, former CMF Warden Robert Fox, and "R. Tharratt and J. Lewis, [] Director and Secretary of CCHCS." ECF No. 1 at 7.

Plaintiff contends that defendants violated, among other things, his state and federal rights to due process and privacy, the Fourth Amendment, the Public Records Act, the Unfair Competition Law, and the United States Commerce Clause. Id. at 15-19. Plaintiff seeks relief including treble damages, a declaratory judgment setting forth plaintiff's proposed findings of fact and conclusions of law, id. at 19-22, and injunctive relief including "a just and unbiased opportunity to correct the inaccuracies maintained in DOJ," id. at 23, see also id. at 6, 22-4.

### C. Analysis

It is an open question whether the due process clause itself creates a liberty interest in the accuracy of criminal history records. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1983). Certain state statutory regimes, however, may create such a liberty interest. Id. (finding that Washington state law provides a liberty interest in accurate prison record information in the proper case). Where such a liberty interest exists, a plaintiff seeking to vindicate his rights must first comply with state procedures for challenging his criminal history record. Id. at 1318-19.

In California, as in Washington, there are carefully prescribed procedures for challenging the accuracy of one's criminal history record. See People v. Martinez, 22 Cal. 4th 106, 131 (2000) (describing procedures set forth at Cal. Penal Code § 11126). As explained by the California Supreme Court:

> [I]n 1971 the Legislature added an article to the Penal Code to establish a process for review and correction of the criminal history information in the Department's possession. (§ 11120 et seq.) The Legislature specifically designed this process "to afford persons concerning whom a record [of criminal history information] is maintained in the files" of the Department an opportunity "to refute any erroneous or inaccurate information contained" in those files. (§ 11121, added by Stats. 1971, ch. 1439, § 1, p. 2844.) To accomplish this goal, since its enactment, section 11121 has required the Department either to furnish applicants with copies of their criminal records (§ 11124) or to permit them to examine their records. Applicants who "desire[] to question the accuracy or completeness" of anything in their records "may submit a written request" to the Department, including a statement of the alleged inaccuracy or omission and "any proof or corroboration available."

> (§ 11126, subd. (a).) The Department must then forward the request to the agency that provided the questioned information, which must review the request and report its conclusion to the Department within 30 days. (§ 11126, subd. (a).) A reviewing agency that agrees with the applicant must correct its records and notify the Department and others to which it has sent the incorrect record. The Department must then correct its records, notify the applicant of the correction within 30 days, and notify those to which it has sent the incorrect record. (§ 11126, subd. (b).) If the reviewing agency finds no error, then the matter is "referred for administrative adjudication," subject to judicial review. (§ 11126, subd. (c).)

People v. Martinez, 22 Cal. 4th at 131.

It is the prisoner's responsibility to initiate an administrative adjudication with the local agency responsible for the criminal history records with which he disagrees. Although the relevant language of Section 11126 does not assign such responsibility ("the matter *shall be referred* for administrative adjudication" (Cal. Penal Code § 11126(c) (emphasis added)), Section 13324 provides the process an inmate must follow to obtain administrative review. As another district court has explained, exhaustion of § 13324 remedies is therefore required under Hernandez for due process claims brought by California prisoners:

> California Penal Code section 13324 allows inmates to question the accuracy of any material contained in a record of their criminal history. Pursuant to section 13324(a), an inmate must first submit a written request to the agency holding the record. After a formal request and denial by the agency, the inmate must refer the matter to administrative adjudication in accord with the rules of the local governing body. Cal. Penal Code § 13324(c). In order for this court to order any records corrected an inmate-plaintiff must show that he has a state created liberty interest in accurate records, that the record is erroneous and that he has requested correction under section 13324(a) and exhausted administrative remedies under section 13324(c).[3] See Hernandez v. Johnson, 833 F.2d 1316, 1318-

---

[3] Cal. Code Regs. tit. 15, § 13324 ("Written request to correct inaccuracy or incompleteness; concurrence by agency; correction of record; notice; denial; administrative adjudication") provides in full:

> (a) If the applicant desires to question the accuracy or completeness of any material matter contained in the record, he may submit a written request to the agency in the form established by it. The request shall include a statement of the alleged inaccuracy or incompleteness in the record, its materiality, and shall specify any proof or corroboration available. Upon receipt of such request, the agency shall, within 60 days of receipt of such written request for

6

19 (9th Cir. 1987).

Reynolds v. State of California, 1994 WL 679973, at *1, 1994 U.S. Dist. LEXIS 19456, at *3 (N.D. Cal. Nov. 30, 1994) (dismissing § 1983 action seeking correction of plaintiff's criminal history record because plaintiff "he has not requested correction to the appropriate agency nor exhausted administrative remedies"). Accord, Mazurak v. Calif. Dep't of Justice, 2006 WL 2255514, at *6, 2006 U.S. Dist. LEXIS 54778, at *20 (E.D. Cal. Aug. 7, 2006), report and recommendation adopted, 2006 WL 2711476, 2006 U.S. Dist. LEXIS 67481 (E.D. Cal. Sept. 20, 2006) (granting defendants' motion for summary judgment on ground, inter alia, that "plaintiff makes no showing that he has even initiated administrative adjudication of any of his disputes, per Cal. Penal Code § 11126(c) and Cal. Govt. Code § 11503 [authorizing administrative adjudication], by filing an accusation with the California Office of Administrative Hearings.").

In the present case, plaintiff alleges that he requested and received a copy of his criminal history record from the state Department of Justice, then "sought to have the DOJ BCIA to make the proper corrections." ECF No. 1 at 13. Plaintiff alleges that, after he received a responsive letter "endorsed by CA Attorney General Kamala Harris, and Cindy Santos of DOJ BCIA" stating that plaintiff's record was accurate (consistent with local records), he made three written requests to DOJ BCIA for an "Administrative Agency Adjudication pursuant to Cal. P.C. § 11126" but

> clarification, review its information and forward to the applicant the results of such review.
>
> (b) If the agency concurs in the allegations of inaccuracy or incompleteness in the record and finds that the error is material, it shall correct its record, and the agency shall inform the applicant of its correction of any material error in the record under this subdivision within 60 days. The agency shall notify all criminal justice agencies to which it has disseminated the incorrect record from an automated system in the past two years of the correction of the record.
>
> The agency shall furnish the applicant with a list of all the noncriminal justice agencies to which the incorrect record has been disseminated from an automated system in the past two years unless it interferes with the conduct of an authorized investigation.
>
> (c) If the agency denies the allegations of inaccuracy or incompleteness in the record, the matter shall at the option of the applicant be referred for administrative adjudication in accordance with the rules of the local governing body.

7

never received a response. Id. at 14.  However, plaintiff was informed by the Third Level Appeal Decision addressing his concerns that the "Criminal Identification and Information (CI&I) report from the Department of Justice (DOJ)" he received, which reflected information contained in CDCR's Electronic Records Management System (ERMS), accurately reflected plaintiff's local criminal history records.  See ECF No. 1 at 28.  Plaintiff was advised that, if he remained dissatisfied, "he has the right to contact the commitment court relative to his concerns relative to his claims of error within this CI&I report from the DOJ."  Id.

Plaintiff alleges that he made three written requests for administrative adjudication directly to DOJ's BCIA.  ECF No. 1 at 14.  However, this was not the appropriate procedure.  Rather, plaintiff was required to exhaust his claims through administrative adjudication with the local commitment court(s) before he filed the instant action.  Without this exhaustion, plaintiff is unable to state a potentially cognizable federal due process claim.  Hernandez, 833 F.2d at 1318-19; see also Cottonham v. Horiuchi, 2013 WL 5539322, at *2, 2013 U.S. Dist. LEXIS 145821, at *4 (N.D. Cal. Oct. 8, 2013) ("the inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury under the Due Process Clause") (collecting cases).

Plaintiff's unsupported references to the Fourth Amendment, the Public Records Act, the Unfair Competition Law, and the United States Commerce Clause also fail to state a cognizable federal claim.

Plaintiff's allegations regarding the potential breach of personal identification and medical information of CCHCS prisoners in 2016 also fails to support a cognizable federal claim.  See n.2, supra, and related text.  Plaintiff speculates that the VA denied his application for benefits based on information obtained from the putative breach.  The court initially notes that these allegations are completed unrelated to plaintiff's challenge to his criminal history record.  Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a).  Moreover, other prisoners have sought without success to pursue claims based on this putative breach; standing has been found lacking for, inter alia, lack of proof of actual disclosure.  See e.g. Tinsley v. Cal. Health Care Servs., 2016 WL 5791675, at *2, 2016 U.S. Dist. LEXIS

137186, at *4 (E.D. Cal. Oct. 3, 2016) ("Here, plaintiff has not shown he has standing to sue because the complaint demonstrates only that the theft of the state's laptop has the potential to injure plaintiff. Plaintiff alleges no actual misuse of his personal information stemming from the theft."). In the present case, the court finds that plaintiff's allegation that the VA relied on CMF medical records disclosed by the breach does not meet the plausibility requirements of Iqbal, 556 U.S. at 678.

Finally, all of the defendants named in the complaint are absolutely or qualifiedly immune from suit, and/or are sued in their supervisorial capacities without any apparent personal responsibility for the matters plaintiff challenges: District Attorney Lamb, Public Defender Clark, Court Report D. Nagao, Probation Officer E. Melia, former California Attorney General Harris, DOJ employees C. Santo and A. Payan, former CDCR Secretary Scott Kernan, former CMF Warden Robert Fox, and CCHCS administrators R. Tharratt and J. Lewis.

For all these reasons, the undersigned finds that further amendment would be futile in this case. The court is persuaded that plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable federal claim. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

IV. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis, ECF No. 2, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

Additionally, IT IS HEREBY RECOMMENDED that this action be dismissed without leave to amend for failure to state a cognizable federal claim.

9

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 12, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE